## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## ASHEVILLE DIVISION

| | |
|---|---|
| In re Application of<br><br>RODRIGO PÉREZ PALLARES,<br>an Ecuadorian citizen, and<br><br>RICARDO REIS VEIGA,<br>an American citizen,<br><br>for an Order to Conduct Discovery for Use in<br>Foreign Proceedings. | Civil Action No: _____ |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF APPLICATION FOR ORDER PURSUANT TO 28 U.S.C. § 1782 TO CONDUCT DISCOVERY FOR USE IN FOREIGN PROCEEDING

HORACK TALLEY PHARR &
LOWNDES, P.A.
John W. Bowers (NC Bar No. 24133)
2600 One Wachovia Center
301 South College Street
Charlotte, NC 28202
Telephone: (704) 377-2500
Facsimile: (704) 372-2619
Email: JBowers@horacktalley.com

*Local Counsel for Rodrigo Pérez Pallares and Ricardo Reis Veiga*

WILLIAMS & CONNOLLY LLP
Kevin T. Baine*
Robert M. Cary*
Beth A. Stewart*
725 Twelfth Street, N.W.
Washington, D.C. 20005
Telephone: (202) 434-5000
Facsimile: (202) 434-5029
Email: KBaine@wc.com

*Attorneys for Ricardo Reis Veiga*

RIVERO MESTRE & CASTRO
Paul E. Dans*
Andrés Rivero*
Jorge A. Mestre*
2525 Ponce de Leon Boulevard
Suite 1000
Miami, Florida 33134
Telephone: (305) 445-2500
Facsimile: (305) 445-2505
Email: pdans@rmc-attorneys.com

*Attorneys for Rodrigo Pérez Pallares*

*Applicants pro hac vice

# TABLE OF CONTENTS

I.    INTRODUCTION .................................................................................................. 1

II.   FACTUAL BACKGROUND.................................................................................. 2

     A.   Numerous Ecuadorian prosecutors have determined that the charges
          are baseless............................................................................................ 3

     B.   The Ecuadorian government renewed the pursuit of criminal charges.................. 5

     C.   The criminal charges rely on the Cabrera Report. ........................................... 6

     D.   The Cabrera Report is the product of fraud and collusion between the
          *Lago Agrio* plaintiffs' team—including Champ—and Richard Cabrera............... 7

III.  ARGUMENT ...................................................................................................... 9

     A.   The Application satisfies all of the statutory requirements of 28 U.S.C.
          § 1782.................................................................................................... 9

     B.   Discretionary considerations weigh in favor of granting discovery. ................... 11

          1.   This Court's assistance is necessary because Champ is not a
               participant in the Ecuadorian criminal case. ............................................ 11

          2.   The need for the Court's assistance is particularly strong given
               the nature and character of the foreign proceedings. ................................ 12

          3.   The Application seeks evidence Messrs. Pérez and Veiga need
               to defend themselves against an unfounded criminal
               prosecution, and is not to circumvent foreign proof-gathering
               restrictions.................................................................................... 13

          4.   The discovery sought is not unduly burdensome, especially
               considering the interest of the Applicants in defending against
               an unwarranted prosecution. .............................................................. 14

     C.   None of the discovery sought is privileged....................................................... 15

IV.   CONCLUSION................................................................................................... 16

# TABLE OF AUTHORITIES

**Federal Cases**

*Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095 (2d Cir. 1995)................................................. 11

*Hooker Chems. & Plastics Corp.*, 112 F.R.D. 333 (W.D.N.Y. 1986)........................................... 15

*In re Application of Chevron Corp.*,
    __ F. Supp. 2d ___, 2010 WL 1801526 (S.D.N.Y. May 10, 2010) ...........................3, 8, 14

*In re Application of Chevron Corp. ("3TM")*,
    2010 WL 2038826 (S.D. Tex. May 20, 2010) ................................................................... 15

*In re Application of Chevron Corp. v. 3TM Consulting, LLC ("3TM 1782")*,
    No. 4:10-mc-134, 2010 U.S. Dist. LEXIS 50113 (S.D. Tex. May 20, 2010)................... 15

*In re Application of OOO Promnefstroy*,
    No. M 19-99(RJS), 2009 WL 3335608 (S.D.N.Y. October 15, 2009) ............................. 10

*In re Application of Ricardo Reis Veiga and Rodrigo Pérez Pallares*,
    No. 10-370-CKK-DAR (D. D.C. Aug. 12, 2010) .............................................................. 2

*In re Application of Rodrigo Pérez Pallares and Ricardo Reis Veiga*,
    No. 10-1918-cv (L) (2d Cir. July 15, 2010) ....................................................................... 1

*In re Compania Chilena de Navegacion*,
    No. 03 CV 5382 (ERK), 2004 WL 1084243 (E.D.N.Y. Jan. 29, 2004) ............................12

*In re Grand Jury Subpoena Duces Tecum*,
    731 F.2d 1032 (2d Cir. 1984)........................................................................................... 16

*In re Letters of Request from the Crown Prosecution Service of the United Kingdom*,
    870 F.2d 686 (D.C. Cir. 1989) ......................................................................................... 10

*In re Letters Rogatory from Tokyo Dist., Tokyo, Japan*, 539 F.2d 1216 (9th Cir. 1976) ............. 10

*In re Noboa*, Nos. M18-302, M19-111, 1995 WL 581713 (S.D.N.Y. Oct. 3, 1995) ....................12

*In re United States*, 713 F.2d 105 (5th Cir. 1983) ....................................................................... 10

*Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004) .......................... 10, 11, 12, 13

*Minatec Fin. S.A.R.L. v. SI Group Inc.*,
    No. 1:08-CV-269 (LEK/RFT), 2008 WL 3884374 (N.D.N.Y Aug. 18, 2008) ...............13

*S. Yuba River Citizens League*, 257 F.R.D. 607 (E.D. Cal. 2009)................................................ 15

*United States v. City of Torrance*, 163 F.R.D. 590 (C.D. Cal. 1995) .......................................... 16

**Other Authorities**

28 U.S.C. 1782 ......................................................................................................... *passim*

Fed. R. Civ. P. 26(b)(4) ........................................................................................... 15

*The Consular Role in International Extradition*,
    U.S. Department of State Foreign Affairs Manual Vol. 7, § 1616 (2005) ........................ 10

Case 1:10-mc-00028-GCM -DLH   Document 2   Filed 08/16/10   Page 4 of 21

# I. INTRODUCTION

Applicants Rodrigo Pérez Pallares and Ricardo Reis Veiga (the "Applicants") apply to this Court, under 28 U.S.C. § 1782, to issue a subpoena to Charles W. Champ Sr., in aid of their defense of the unfounded criminal prosecution brought against them by the Government of Ecuador ("GOE"). Messrs. Pérez and Veiga seek documents and testimony related to Champ's involvement in drafting a report for the purportedly neutral court-appointed expert, Richard Stalin Cabrera Vega ("Cabrera"), in a highly-publicized $27 billion civil suit against Chevron Corporation in Ecuador (the "*Lago Agrio* litigation").

Mounting evidence indicates that Cabrera's report (the "Cabrera Report") is the product of a fraud perpetuated by the *Lago Agrio* plaintiffs and their attorneys. This report, in turn, provides the evidentiary basis for the criminal charges against Messrs. Pérez and Veiga. By this Application, Messrs. Pérez and Veiga seek the full story behind the report's creation.

Just three weeks ago, on an emergency basis, the Second Circuit ordered production of outtakes from the film *Crude* relating to communications between the *Lago Agrio* plaintiffs' counsel and officials of the GOE or experts in the civil litigation, including Cabrera. *In re Application of Rodrigo Pérez Pallares and Ricardo Reis Veiga*, No. 10-1918-cv (L) (2d Cir. July 15, 2010). These outtakes provide evidence of fraud and collusion between the *Lago Agrio* plaintiffs and Cabrera. Notably, Champ appears in the outtakes, meeting with Cabrera and the *Lago Agrio* plaintiffs' counsel. During these meetings, which took place before Cabrera had even been appointed as the purportedly neutral expert by the *Lago Agrio* court, plaintiffs' counsel and their team orchestrate the drafting of Cabrera's supposedly independent report.

In response to a second related § 1782 application, a Magistrate Judge of the United States District Court for the District of Columbia on July 22, 2010 granted a § 1782 application seeking discovery from Alberto Wray, prior counsel for the *Lago Agrio* plaintiffs, concerning communications related to the criminal proceedings and the work of another expert. *In re Application of Ricardo Reis Veiga and Rodrigo Pérez Pallares*, No. 10-370-CKK-DAR (D. D.C. Aug. 12, 2010) (minute order granting application).

This Application is premised in large measure on the arguments successfully advanced in support of those applications and relies, in part, on the information recently produced pursuant to the application for the *Crude* outtakes.

## II.    FACTUAL BACKGROUND

The criminal charges against Messrs. Pérez and Veiga are premised on their work in the 1990s as in-house counsel and legal representatives for Texaco Petroleum Company ("TexPet"), now a subsidiary of Chevron. Until 1992, TexPet participated in oil operations in Ecuador as the minority member of a joint venture (the "Consortium") with the Ecuadorian state-owned oil company, Petroecuador.   After the Consortium ended, TexPet conducted an environmental remediation of designated sites under a settlement agreement agreed to and supervised by the GOE.  In exchange, in 1998, TexPet received a final release against any future environmental claims arising out its participation in the Consortium (the "Final Release"). The Final Release was signed by the Ecuadorian Minister of Energy of Mines, by Petroecuador officials, and by Messrs. Pérez and Veiga on TexPet's behalf.

Since then, U.S. lawyers have funded and directed a highly-publicized civil suit filed in Ecuador in 2003 (the *Lago Agrio* litigation) that seeks to impose liability upon Chevron for

2

alleged environmental damages, notwithstanding the Final Release.[1]    The Government of Ecuador ("GOE"), which has stated that it will receive 90% of any recovery in the Lago Agrio case, has filed criminal charges against the Ecuadorian officials and TexPet lawyers (Messrs. Pérez and Veiga) who signed the Final Release that stands as an impediment to such a recovery. The charges are, in essence, that in signing the Final Release, the Ecuadorian officials and Messrs. Pérez and Veiga falsely represented that environmental remediation had been completed when it had not been.

### A.    Numerous Ecuadorian prosecutors have determined that the charges are baseless.

The same year that the *Lago Agrio* litigation was filed, the Comptroller General of Ecuador filed a complaint ("*denuncia*") with Ecuador's Prosecutor General alleging that Messrs. Pérez and Veiga, along with former GOE and Petroecuador officials, had supposedly falsified public documents by executing the Final Release and violated environmental laws.

The baseless Ecuadorian prosecution was initiated to undermine the Final Release and pressure Chevron to settle the *Lago Agrio* litigation.    Throughout the course of the *Lago Agrio* litigation, Chevron has asserted that the suit is barred by the Final Release. Because the Final Release presents an obvious and serious impediment to the *Lago Agrio* litigation, the plaintiffs' attorneys and the GOE have sought to nullify or undermine its value.   The relationship between the criminal charges and the effort to undermine the Final Release became clear in an August 10, 2005 email *sent to one of the plaintiffs' lawyers* in the *Lago Agrio* litigation by the Ecuadorian

---

[1] This history is set forth in Judge Kaplan's Decision and Order dated May 6, 2010 (as corrected). *See In re Application of Chevron Corporation,* __ F. Supp. 2d ___, 2010 WL 1801526 (S.D.N.Y. May 10, 2010) ( the "*Crude Litigation*").

Deputy Attorney General, Martha Escobar, where she says that the Attorney General's office is searching for a way to nullify the Release:

> [T]he Attorney General's Office and all of us working on the State's defense [a]re *searching for a way to nullify or undermine* the value of the [1995 Settlement Agreement] and *the final [release]* and [] our greatest difficulty [lies] in the time that has passed. The Attorney General remains resolved to have the Comptroller [General's] Office conduct another audit (that also seems unlikely to me given the time); *he wants to criminally try those who executed the contract (that also seems unlikely to me, since the evidence of criminal liability* established by the Comptroller[] [General's] Office *was rejected by the prosecutor.*)

Dans Decl. Ex. 1. (emphasis added).

In the three years that followed the Comptroller General's *denuncia*, multiple prosecutors submitted reports of their investigations—each rejecting the charges as meritless. The reports concluded that the accusations lacked any factual basis, that the claims were, if anything, civil and not criminal matters, that they sought to invoke *ex post facto* application of a new criminal statute that violated Ecuador's Constitution, and that, even if they were cognizable, the statute of limitations had expired.

In affirming the dismissal of the environmental charges in March 2007, Washington Pesántez Muñoz, then the District Prosecutor for Pichincha Province in Ecuador, stated that there was not sufficient evidence to pursue the case:

> I find that there is not sufficient evidence to pursue the case against ... Mr. Ricardo Reis Veiga and Mr. Rodrigo Pérez Pallares, representatives of TexPet. Therefore, I support the motion for dismissal made by the Assistant District Prosecutor.

Dans Decl. Ex. 2. His opinion was later subsequently confirmed by order of a criminal court.

The criminal charge for falsification of public documents had similarly been rejected by Ecuador's Prosecutor General, Cecilia Armas, on August 9, 2006:

4

> In the case at hand, the final document of September 1998 was prepared on the basis of nine prior documents that were not objected to or challenged by Petroecuador or the Ministry of Energy and Mines at the appropriate time, with the understanding that they reflected reality. . . . It is important to note that in no part of the criminal complaint is there evidence that the document mentioned so often was altered in any way.

Dans Decl. Ex. 3 at 3. A subsequent Prosecutor General, Jorge Germán, likewise twice insisted to the Court that it was obliged to dismiss and archive the case under the Code of Criminal Procedure. He, too, was ignored.

In September 2006, the Ecuadorian Attorney General, in sworn deposition testimony in a case then-pending in the Southern District of New York regarding arbitration between TexPet and Petroecuador, admitted that the GOE had no factual evidence to support any contention of criminal falsification in connection with the TexPet remediation program and execution of the Final Release. Dans Decl. Ex. 4.

### B. The Ecuadorian government renewed the pursuit of criminal charges.

By the start of 2007, the *Lago Agrio* plaintiffs began a concerted, and ultimately successful, effort to have the newly-elected President of Ecuador, Rafael Correa, intervene in their dispute with Chevron. Shortly after he assumed the presidency in January 2007, Correa demanded the criminal prosecution of those who had signed the Final Release, despite the prior conclusions of multiple prosecutors that the charges were baseless. Dans Decl. Ex. 5. Subsequent to that speech, Correa replaced the Prosecutor General with a new one, Washington Pesántez Muñoz. On March 31, 2008, Prosecutor General Pesántez (the same District Prosecutor who had rejected the Comptroller General's initial environmental charge in 2006), reopened the *denuncia* based on alleged unspecified "new evidence." Dans Decl. Ex. 6. This new evidence appears to be the Cabrera Report. Following the investigation pursuant to this reopened

*denuncia*, on April 29, 2010, the Prosecutor General issued the *Dictamen acusatorio*—a formal accusation—against Messrs. Pérez and Veiga. Dans Decl. Ex. 7.

### C. The criminal charges rely on the Cabrera Report.

The Accusation is a lengthy document that contains repetitive descriptions of various events, documents, test results, and testimony. But the gravamen of the charges are identified at the outset, as follows: that "[t]he contract, scope of work, and Remedial Action Plan were drafted with technical and legal omissions and deficiencies, the consequence of which was that they were not performed correctly and . . . only a very limited remediation with inadequate technical parameters was achieved"; that "[s]everal of the work projects . . . did not comply with National Environmental Regulations"; that "several pits" from which soil samples were taken "at different times" "do not meet the standards in the Remedial Action Plan"; and that the Minister of Energy and Mines, the Executive President of Petroecuador, the Manager of Petroproducción, and Messrs. Pérez and Veiga "signed the Final Release . . . despite the fact that such work had not fulfilled the contractual terms of the Remedial Action Plan and in full knowledge of the irreparable damage that TEXACO caused to the environment in the Amazon Region of the country." Dans Decl. Ex. 7 at 4-7.

The Accusation's allegations of an inadequate remediation mirror the conclusions of the Cabrera Report. And the Accusation specifically relies on the Cabrera Report, stating that:

> From the inculpatory evidence gathered by the Office of the Prosecutor, through this investigation, mentioned and described in this opinion, it is established that . . . **Ricardo Reis Veiga** and **Rodrigo Pérez Pallares**, Vice President and Legal Representative of TEXPET, respectively, signed the **Final Release** for the environmental remediation work . . .despite the fact that they did not meet the contractual terms of the Remedial Action Plan and with knowledge of the irreparable damage to the environment caused by TEXACO in the Amazon region of the country. These

6

facts were affirmed by the technical team from the Office of the Comptroller General of Ecuador, through four inspections, performed after the works executed by Texaco, and subsequently corroborated with the procedures carried out within this investigation, **such as the technical reports prepared by experts . . . [including] Richard Cabrera,**" who "concur[s] in indicating that environmental contamination physically exists in the Amazon area, which was occupied by, and supposedly remediated by, Texaco [.]"

*Id* at 119-121. (emphasis added).

On June 17, 2010, the Accusation was formally served on Messrs. Pérez and Veiga, triggering a process that will result in a preliminary hearing.[2] Dans Decl. Ex. 8. At the preliminary hearing, Messrs. Pérez and Veiga are entitled to present their substantive defense, and the judge is to issue a ruling either accepting the Prosecutor's Accusation and moving the case forward to trial, or dismissing the criminal charges altogether. *Id.* Messrs. Pérez and Veiga seek evidence from Champ for the hearing and to present in any subsequent trial.

### D.  The Cabrera Report is the product of fraud and collusion between the *Lago Agrio* plaintiffs' team—including Champ—and Cabrera.

On July 2, 2009, the Prosecutor General took the testimony of Cabrera as "the expert who conducted the environmental analysis of the wells and pits in the sector occupied by oil company TEXACO while it was in our country." Dans Decl. Ex. 9 at 1-2. During that deposition, Cabrera presented himself as a neutral and independent expert. And Cabrera did not disclose any contribution by the *Lago Agrio* plaintiffs, Champ, or their other environmental consultants to his report. Rather, he represented that the report drew upon "reports submitted in each area [(physical, biotic and social)] by the professionals" on his disclosed team. *Id.* at 3. When directly asked by the prosecutor for the "names of the professionals who assisted you with your

---

[2] Under Ecuadorian law, this preliminary hearing should have taken place within 30 days of service of the Accusation. The Applicants thus face an imminent hearing on an unknown date.

assessment," Cabrera identified only those individuals and none of the *Lago Agrio* plaintiffs' consultants. *Id.* at 2.

Cabrera's claims that his report is impartial and independent has been utterly undermined by film footage obtained pursuant to a prior related § 1782 application. *In re Applic. of Chevron Corp.*, -- F. Supp. 2d --, 2010 WL 1801526, at *1 (S.D.N.Y May 10, 2010) (authorizing subpoena for outtakes from the movie *Crude*), *aff'd Chevron Corp. v. Berlinger*, Nos. 10-1918-cv, 10-1966-cv (2d Cir. July 15, 2010) (order). This footage shows Champ, along with *Lago Agrio* plaintiffs and other environmental consultants, meeting with Cabrera to plan his export report on March 3, 2007, **two weeks before** his appointment as the *Lago Agrio* court's global damages expert. *Crude* Outtakes,[3] CRS-187-01 CLIP-02-01, CRS-189-00-CLIP-01, CRS-189-00-CLIP-02, CRS-189-00-CLIP-03, CRS-191-00-CLIP-01, CRS-191-00-CLIP-02, CRS-192-00-CLIP-01; Dans Decl. Ex. 10.[4] The further evidence of collusion between Champ, the *Lago Agrio* plaintiffs and Cabrera, as detailed in Chevron's memorandum, is equally startling. *See* Chevron Mem. at 6 – 13.

Nor is this the only evidence of collusion between Cabrera and the *Lago Agrio* plaintiffs. During his deposition, Cabrera referred the Prosecutor General to Annex H of the Report, claiming that in it he "conduct[ed] an inventory of the pits." Dans Decl. Ex. 9 at 2. That Annex has now been included as evidence against Messrs. Pérez and Veiga in the record of the criminal proceeding. Discovery produced pursuant to prior § 1782 applications has indicated that this

---

[3] *Crude* Outtakes video clip references refer to the *Crude* Outtakes DVD appended as an exhibit to the related §1782 application filed by Chevron Corporation.

[4] This footage was obtained through a related § 1782 proceeding, in which Chevron and Messrs. Pérez and Veiga sought "outtake" footage from the movie *Crude*. *In re Applic. of Chevron Corp.* ("*Berlinger I*"), -- F. Supp. 2d --, 2010 WL 1801526, at *1 (S.D.N.Y. May 10, 2010) (authorizing subpoena for outtakes from the movie "*Crude*"), *aff'd Order, Chevron Corp. v. Berlinger*, Nos. 10-1918-cv, 10-1966-cv (2d Cir. July 15, 2010).

database was not the work of Cabrera's team, but was created by the *Lago Agrio* plaintiffs and provided to Cabrera. *See* Chevron Mem. at 11-12; Request for Judicial Notice of Related Actions ("RJN"), RJN Ex. 1.

The purportedly neutral Cabrera Report relies upon and incorporates the materials provided by the *Lago Agrio* plaintiffs' team—including Champ—to reach its conclusions that Chevron failed to perform the required environmental remediation. This alleged failure to remediate forms the basis for the pending criminal charges against the Applicants. Like Chevron, the Applicants seek evidence of fraud regarding the court-appointed expert Cabrera, and collusion between Cabrera and counsel for the *Lago Agrio* plaintiffs. The *Crude* outtakes provide irrefutable evidence of this collusion. The Applicants seek the full story, a story that only Champ can provide.

## III.   ARGUMENT

The Application satisfies all of the threshold requirements of § 1782 and all of the relevant discretionary factors also favor granting the discovery. The non-privileged discovery sought by the Applicants is precisely the sort contemplated by 28 U.S.C. § 1782. Champ has information that would undermine the criminal charges at issue and demonstrate that the evidence against the Applicants is the product of fraud.

### A.   The Application satisfies all of the statutory requirements of 28 U.S.C. § 1782.

28 U.S.C. § 1782 authorizes federal district courts to order discovery for use in foreign proceedings, including criminal prosecutions.[5] 28 U.S.C. § 1782(a). As stated by the Supreme

---

[5] 28 U.S.C. § 1782 provides, in relevant part: "The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation. . . . The

9

Court in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 246-47 (2004), to obtain discovery the applicant must make a threshold showing:

> (1) that the person from whom the discovery is sought either "resides" or is "found" in this District;
>
> (2) the discovery is "for use in a proceeding" before a "foreign tribunal"; and
>
> (3) the applicant qualifies as an "interested person."

*Id.* at 246-47. The Application filed by Messrs. Pérez and Veiga meets all of the requirements of 28 USC § 1782. First, Champ resides in Asheville, North Carolina and thus, "resides" and is "found" in the District. *See* Dans Decl. Ex. 11; *see also In re Application of OOO Promnefstroy*, No. M 19-99(RJS), 2009 WL 3335608, at *5 (S.D.N.Y. October 15, 2009). Second, the discovery is "for use in a proceeding" before a "foreign tribunal"—the criminal case in Ecuador.[6] Section 1782 can be invoked by its terms in "criminal investigations conducted before formal accusation." 28 U.S.C. § 1782(a). In this case, a formal accusation has been made in the *Dictamen Acusatorio*, and a formal criminal proceeding is underway. The Ecuadorian court entertaining the criminal prosecution qualifies as a foreign tribunal under Section 1782. *See In re Letters Rogatory from Tokyo Dist., Tokyo, Japan*, 539 F.2d 1216, 1220 (9th Cir. 1976); *see also In re Letters of Request from the Crown Prosecution Service of the United Kingdom*, 870

---

Order may be made . . . upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court. . . . To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure."

[6] Evidence that the charges were brought for the improper purpose of pressuring Chevron would also support a contemplated petition for relief against human rights violations before the Inter-American Commission on Human Rights of the Organization of American States. *See Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 259 (2004) (proceeding need only be "within reasonable contemplation"). In addition, this evidence would also be useful in resisting any request for extradition. The State Department has discretion whether to order extradition, *In re United States*, 713 F.2d 105, 108 (5th Cir. 1983), and it "considers...questions about political motivation" in exercising its discretion. *The Consular Role in International Extradition*, U.S. Department of State Foreign Affairs Manual Vol. 7, § 1616 (2005).

F.2d 686, 689 (D.C. Cir. 1989). Third, as defendants named in the Ecuadorian criminal proceedings, Messrs. Pérez and Veiga each qualify as an "interested person" within the meaning of Section 1782. *See Intel*, 542 U.S. at 256 ("No doubt litigants are included among, and may be the most common example of the 'interested person[s]' who may invoke § 1782.").

## B. Discretionary considerations weigh in favor of granting discovery.

Each of the four discretionary factors enumerated by the Supreme Court in *Intel* weigh in favor of granting the § 1782 application. While the Court need not consider all of these factors in deciding to grant an application, the discretionary factors that may be considered are:

> (1) whether the persons from whom the discovery is being sought are participants in the foreign proceeding;
>
> (2) the nature and character of the foreign proceeding and the receptivity of the foreign tribunal to U.S. federal court judicial assistance;
>
> (3) whether the request is an attempt to circumvent foreign proof-gathering limitations; and
>
> (4) whether the discovery sought is unduly burdensome.

*Intel*, 542 U.S. at 264-5.[7] In this case, all of the discretionary factors in *Intel* dictate that the Court should exercise its discretion and grant Messrs. Perez and Veiga's Application.

## 1. This Court's assistance is necessary because Champ is not a participant in the Ecuadorian criminal case.

Champ is not a party to the GOE's criminal prosecution of Messrs. Pérez and Veiga. The Supreme Court stressed in *Intel* that the assistance provided under 28 U.S.C. § 1782 is particularly needed, where, as here, the discovery is sought from persons who are not

---

[7] Once the statutory requirements of § 1782 are met, as they are here, the district court is called upon to exercise its discretion liberally in favor of granting discovery. *See Euromepa S.A. v. R. Esmerian, Inc.*, 51 F. 3d 1095, 1102 (2d Cir. 1995) (stating that policy underlying § 1782 generally obliges district courts to assist the applicant in the requested discovery).

participants in the proceeding abroad. *Intel*, 542 U.S. at 244 ("[N]onparticipants in foreign proceedings may be outside the foreign tribunal's jurisdictional reach; thus, their evidence, available in the United States, may be unobtainable absent § 1782(a) aid."). Without this Court's assistance, Messrs. Pérez and Veiga will have no other means to obtain the information that they seek from Champ.

### 2. The need for the Court's assistance is particularly strong given the nature and character of the foreign proceedings.

Messrs. Pérez and Veiga face serious criminal charges in Ecuador that present a threat to their personal liberty. There is ample reason to believe that the charges are politically and economically motivated, and that they are merely the latest victims of the abuse of the criminal process in Ecuador about which our own State Department has warned. "Criminal complaints and arrest warrants against foreign company officials," the State Department has found, "have been used to pressure companies involved in commercial disputes" in Ecuador. U.S. State Dep't., 2009 Investment Climate Statement—Ecuador, Bureau of Economic, Business, and Energy Affairs (February 2009).[8] The United States has a strong interest in protecting its citizens against the kinds of abusive practices that the State Department has found to exist.

Section 1782 has been used to provide discovery for matters, like the prosecution here, pending in Ecuadorian courts, including the *Lago Agrio* litigation itself. *See In re Compania Chilena de Navegacion*, No. 03 CV 5382 (ERK), 2004 WL 1084243, at *4 (E.D.N.Y. Jan. 29, 2004) (ordering depositions and production of evidence to assist in Ecuadorian proceeding); *In re Noboa*, Nos. M18-302, M19-111, 1995 WL 581713, at * 2 (S.D.N.Y. Oct. 3, 1995) (ordering depositions to assist in Ecuadorian probate proceeding). And the discovery is clearly appropriate

---

[8] Available on-line at http://www.state.gov/e/eeb/rls/othr/ics/2009/117668.htm.

Case 1:10-mc-00028-GCM -DLH   Document 2   Filed 08/16/10   Page 16 of 21

whether or not all of the evidence would be allowed by the Ecuadorian court in the arbitrary and politically charged atmosphere in which the prosecution is pending. *See Intel*, 542 U.S. at 265 (holding that a § 1782 petition could be granted despite the fact that "[t]he European Commission has stated in *amicus curiae* briefs to this Court that it does not need or want the District Court's assistance."). "[I]t is sufficient that the applicant intend to offer the evidence to a foreign court. Whether the foreign court will ultimately accept the evidence is beyond th[e] [United States] Court's ability to determine." *Id.*

> **3.** **The Application seeks evidence Messrs. Pérez and Veiga need to defend themselves against an unfounded criminal prosecution, and is not to circumvent foreign proof-gathering restrictions.**

Messrs. Pérez and Veiga's Application is in no way an attempt to circumvent foreign proof-gathering restrictions. Rather, it is in furtherance of their good-faith and well-supported contention and belief that they are being targeted for criminal prosecution for ulterior motives and without any evidentiary basis. In determining whether a petition is an effort to circumvent foreign proof-gathering restrictions, the consideration for the Court is whether the discovery is being sought in bad faith. *Minatec Fin. S.A.R.L. v. SI Group Inc.*, No. 1:08-CV-269 (LEK/RFT), 2008 WL 3884374, at *8 (N.D.N.Y Aug. 18, 2008).

As explained in this Application, Messrs. Pérez and Veiga seek evidence here that the prosecution against them is largely based upon falsified evidence. Most recently, the outtakes from the film *Crude*—obtained by the Applicants through an order of this court pursuant to § 1782—have revealed that the Cabrera Report is not the "independent," "impartial," and neutral assessment of Chevron's remediation that it purports to be, but is instead the product of improper collusion between the *Lago Agrio* plaintiffs' agents and Cabrera and his team. The outtakes

Case 1:10-mc-00028-GCM -DLH   Document 2   Filed 08/16/10   Page 17 of 21

from *Crude* also reveal that Champ participated in drafting this report and attended meetings during which counsel for the *Lago Agrio* plaintiffs orchestrated the fraud. Dans Decl. Ex. 10.[9]

Combined with (a) the rejection of criminal charges by two Prosecutors General and by the District Prosecutor who later pursued the charges as Prosecutor General; (b) the communications between the Ecuadorian Attorney General's office and attorneys for the *Lago Agrio* plaintiffs confirming their common desire to pursue the charges to advance the *Lago Agrio* litigation; (c) the pressure placed by the President of the Republic on his newly appointed Prosecutor General to bring criminal charges against the Applicants; (d) the Accusation's heavy reliance on the Cabrera Report's conclusions and "evidence" of improper remediation; and (e) the evidence that all of the remediation required to be done was in fact completed and certified by officials of the GOE based upon testing and analysis of scientists at the Central University of Ecuador who were selected by the GOE, all these reasons provide ample grounds for the Applicants' good-faith belief that Respondent has evidence of collusion and fraud perpetuated by the *Lago Agrio* plaintiffs and Cabrera.

     4.    **The discovery sought is not unduly burdensome, especially considering the interest of the Applicants in defending against an unwarranted prosecution.**

The information sought in this Application is highly relevant to Messrs. Pérez and Veiga's defense in a pending criminal proceeding. The burden on Champ is slight. The subpoenas seek only production of documents, data, and information that are relevant to the Applicants' defense of the criminal charges against them, and that Champ sit for standard depositions regarding those issues. Any incidental "burden" on Champ is clearly outweighed by

---

[9] *See* n. 4, *supra.*

the interests of Messrs. Pérez and Veiga in defending themselves against a baseless prosecution brought for improper purposes.

Accordingly, Messrs. Pérez and Veiga's Application passes muster under not only the mandatory statutory requirements of 28 U.S.C. §1782, but also under the discretionary factors set out in *Intel*.

## C.     None of the discovery sought is privileged.

In their objections to prior related § 1782 applications, the *Lago Agrio* plaintiffs have argued that the documents and testimony of their consultants are "privileged." Their claims of privilege have been rejected by every District Court that has considered them.[10]

Any claim of privilege here would be similarly without merit. First, the evidence sought has been incorporated into "testimony" making it discoverable and not privileged. *See* RJN, Ex. 2, 42-43; *In re Applic. of Chevron Corp.* ("*3TM*"), 2010 WL 2038826, at *10 (S.D. Tex. May 20, 2010); *see also* Fed. R. Civ. P. 26(b)(4).    Where, as here, Champ and the plaintiffs' other U.S.-based consulting "expert[s] ha[ve] 'entered the judicial arena'" by submitting testimony to the court (in Ecuador) and becoming testifying experts themselves, all their work becomes discoverable. *S. Yuba River Citizens League*, 257 F.R.D. 607, 611 (E.D. Cal. 2009); *see also, e.g., Hooker Chems. & Plastics Corp.*, 112 F.R.D. 333, 339 (W.D.N.Y. 1986).    Second, any

---

[10] **Texas:** *In re Applic. of Chevron Corp. v. 3TM Consulting, LLC* ("*3TM 1782*"), No. 4:10-mc-134, 2010 U.S. Dist. LEXIS 50113, at *13 (S.D. Tex. May 20, 2010) (denying respondents' and Plaintiffs' Motion to Quash based on claims of attorney-client, attorney work product, and non-testifying expert privileges, finding that "the plaintiffs have failed to carry their burden to demonstrate a privilege applies"); **New Jersey:** Related Actions RJN, Ex. 2 (*In re Applic. of Chevron Corp.*, No. 2:10-cv-02675-SRC-MAS, Trans. (D. N.J. June 11, 2010) (denying respondents' and Plaintiffs' claim of attorney-client, attorney work product, and non-testifying expert privileges, and finding that application of the crime-fraud exception was warranted)); **Colorado:** Related Actions RJN, Ex. 3 (*Chevron Corp. v. Stratus Consulting, Inc., et al.*, No 10-cv-00047-JLK, Order (D. Colo. Apr. 13, 2010) (denying ROE's Motion to Quash)); Related Actions RJN, Ex. 4 (*Chevron Corp. v. Stratus Consulting, Inc., et al.*, No 10-cv-00047-JLK, Order (D. Colo. May 25, 2010) (denying Plaintiffs' Motion for Protective Order, holding that Plaintiffs waived claims of attorney-client, attorney work product, and non-testifying expert privileges)).

purported privilege has been waived by disclosure to Cabrera, the *Lago Agrio* plaintiffs, the Ecuadorian court, or other third parties. As explained by the District Court in Colorado, "the fact that the materials were voluntarily given to Cabrera, an agent of the court, destroys this privilege even if it were to apply." RJN, Ex. 4. *See also United States v. City of Torrance*, 163 F.R.D. 590, 593 (C.D. Cal. 1995) ("When counsel forwards documents prepared by a non-testifying consultant to a testifying expert, they become discoverable."). Third, any purported privilege fails under the crime-fraud exception. Respondent was involved in a scheme to procure a fraudulent official report with the intent of extorting a settlement or obtaining a civil judgment based on that report. "It is well-established that communications that otherwise would be protected by the attorney-client privilege or the attorney work product privilege are not protected if they relate to client communications in furtherance of contemplated or ongoing criminal or fraudulent conduct." *In re Grand Jury Subpoena Duces Tecum*, 731 F.2d 1032, 1038 (2d Cir. 1984). As stated by the District of New Jersey with regard to communications between another of the *Lago Agrio* plaintiffs' U.S.-based consultants and Cabrera, "the concept of an employee of a party covertly functioning as a consultant to a court-appointed expert in the same proceeding can only be viewed as a fraud upon that tribunal." RJN Ex. 2. Thus, any efforts to claim that the Application should be denied on the grounds of privilege must fail.

## IV.   CONCLUSION

For all the reasons stated, Messrs. Pérez and Veiga respectfully request that the Court grant their Application for the issuance of subpoenas under 28 U.S.C. § 1782.

This the 16th day of August, 2010.

Respectfully submitted,

/s/ John W. Bowers

John W. Bowers (NC Bar No. 24133)
HORACK TALLEY PHARR &
LOWNDES, P.A.
2600 One Wachovia Center
301 South College Street
Charlotte, NC 28202
Telephone: (704) 377-2500
Facsimile: (704) 372-2619
Email: JBowers@horacktalley.com

*Local Counsel for Rodrigo Pérez
Pallares and Ricardo Reis Veiga*

Paul E. Dans*
Andrés Rivero*
Jorge A. Mestre*
RIVERO MESTRE & CASTRO
2525 Ponce de Leon Boulevard
Suite 1000
Miami, Florida 33134
Telephone: (305) 445-2500
Facsimile: (305) 445-2505
Email: pdans@rmc-attorneys.com

*Attorneys for Rodrigo Pérez Pallares*

Kevin T. Baine*
Robert M. Cary*
Beth A. Stewart*
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005
Telephone: (202) 434-5000
Facsimile: (202) 434-5029
Email: KBaine@wc.com

*Attorneys for Ricardo Reis Veiga*

*Applicants for Admission Pro Hac Vice*